Filed 8/23/19; Certified for Partial Pub. 9/10/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| J.H. BOYD ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KENNETH ROBERT BOYD, Individually and as Trustee, etc., et al., <br><br> Defendants and Appellants. | F078292 <br><br> (Super. Ct. No. 18CECG02227) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County. Kimberly A. Gaab, Judge.

Quall Cardot, Matthew W. Quall and Matthew R. Dardenne for Defendants and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott M. Reddie; Whitney, Thompson & Jeffcoach and Timothy L. Thompson for Plaintiff and Respondent.

-ooOoo-

Kenneth Robert Boyd (Ken) and Susan K. Boyd (Susan), individually and as Trustees of the Boyd Trust dated December 23, 1999 (the Boyd Trust) (collectively, appellants) appeal from an order denying their motion to compel arbitration or, in the

alternative, motion for judicial reference. Appellants sought to compel arbitration, or judicial reference, of claims J.H. Boyd Enterprises, Inc. (JHBE) brought against them for judicial foreclosure and declaratory relief related to a promissory note JHBE entered into with the Boyd Trust, which was secured by a deed of trust. We affirm the order denying appellants' motion to compel arbitration and, because an order denying judicial reference is not an appealable order, we grant JHBE's motion to dismiss that portion of the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Ken and Susan are the settlors, beneficiaries and trustees of the Boyd Trust. JHBE is a California corporation originally created, owned, and operated by Ken's father, Joseph Haig Boyd (J.H.), who passed away in March 2015. In 2014, J.H. turned the day-to-day operations of JHBE over to his daughter, Martha Marsh (Martha), who is the president and chairperson of JHBE's board of directors. Upon J.H.'s death, Martha, together with her husband and sister, became the majority owners of JHBE, while Ken became a "frozen-out minority owner."

***The Promissory Note***

In May 2008, the Boyd Trust borrowed $2 million from JHBE.[1] Ken and Susan executed a $2 million promissory note (the note) on behalf of the Boyd Trust, as well as a deed of trust secured by real property located on Modoc Avenue in Kerman (the property). The note, which JHBE drafted, provides for specific monthly payments, with the outstanding balance due in full on May 15, 2018.

The note contains a provision entitled "Governing Law," which states, in pertinent part: "This Note will be governed by federal law applicable to Lender and, to the extent

---

[1] According to Ken, JHBE obtained the funds via a loan from Wells Fargo Bank, which was secured by an apartment complex JHBE owned. The "Business Loan Agreement" between JHBE and Wells Fargo Bank, which shows JHBE borrowed $2 million from Wells Fargo Bank effective May 7, 2008, is attached to Ken's declaration in support of the motion to compel arbitration.

2.

not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions."

The note also contains a section entitled "Arbitration Agreement."[2]  Next to the heading "Arbitration – Binding Arbitration," the note states:  "Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program.  A 'Dispute' shall include any dispute, claim or controversy of any kind, whether in contract or in tort, Legal or equitable, now existing or hereafter arising, relating in any way to this Agreement or any related agreement incorporating this Arbitration Program (the 'Documents'), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving Business Banking, Regional Banking, or any successor group or department of Lender.  DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY."

The "Arbitration Agreement" contains six subparagraphs lettered A through F.[3]  The "Governing Rules" contained in paragraph A provide in pertinent part:  "Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the AAA (American Arbitration Association) …."  Paragraph B provides the "arbitration requirement" does not limit any party's right to foreclose against real or personal property collateral, but

---

[2]    The "Business Loan Agreement" between JHBE and Wells Fargo Bank contains an identical "Arbitration Agreement."

[3]    The subparagraphs have the following headings:  "A. Governing Rules"; "B. No Waiver of Provisional Remedies, Self-Help and Foreclosure"; "C. Arbitrator Qualifications and Powers"; "D. Discovery"; "E. Miscellaneous"; and "F. State-Specific Provisions."

"[t]his exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder…."

Paragraph F contains five "State-Specific Provisions," which apply when that state's law "governs the Dispute."[4] As pertinent here, the California provision states: "If California law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference: Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with arbitration. If any such Dispute is not submitted to arbitration, the Dispute shall, at the election of any party, be referred to a referee in accordance with California Code of Civil Procedure Section 638 et seq., and this general reference agreement is intended to be specifically enforceable in accordance with said Section 638. A referee with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures. Judgment upon the decision rendered by a referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645."

### JHBE's Complaint

In March 2018,[5] the note's outstanding balance was over $1.5 million. On March 14, Ken sent JHBE a letter stating he was tendering payment in full on the note through the transfer to JHBE of JHBE stock, which was held by him and other individuals. Ken also offered to pay off the debt the Boyd Trust owed JHBE on a second $2.5 million promissory note through the transfer of JHBE stock. Thereafter, the attorneys for JHBE and the Boyd Trust exchanged a series of letters concerning the

---

[4]     The five states are California, Idaho, Montana, Nevada and Utah.

[5]     Subsequent references to dates are to dates in 2018, unless otherwise stated.

4.

payoff of the note.  Appellants took the position they made valid tenders to pay the outstanding balance, which JHBE unreasonably rejected, while JHBE believed appellants' tenders were defective.

Eventually, the Boyd Trust demanded the matter be submitted to arbitration, as JHBE's failure to accept the Boyd Trust's tender of payment created a "dispute" under the note.  JHBE refused the demand, in part, because it had not elected to proceed with arbitration as provided in paragraph F of the arbitration clause.

The parties were unable to resolve their dispute and on May 22, JHBE declared the note in default.  On June 20, JHBE filed a complaint against appellants for judicial foreclosure and declaratory relief.  In its cause of action for judicial foreclosure, JHBE asked for compensatory damages in the form of the balance due on the note, a late charge, costs and attorney fees, and an order that the deed of trust be foreclosed.  In its declaratory relief cause of action, JHBE asked for a declaration that the Boyd Trust's tenders of payment were not valid or legally enforceable, JHBE did not breach the note, and the Boyd Trust defaulted on the note as of May 16.

### *The Motion to Compel Arbitration*

In lieu of answering the complaint, appellants filed a motion to compel arbitration pursuant to Code of Civil Procedure sections 1281.2, 1281.4, and 1281.7,[6] or, in the alternative, to appoint a referee pursuant to section 638 et seq., and to either dismiss or stay this proceeding.  Appellants supported the motion with a memorandum of points and authorities, a request for judicial notice of the complaint, and Ken's declaration.

Appellants asserted the note contained a valid and enforceable agreement to arbitrate, which did not provide any "carve outs, exceptions or limitations" exempting the causes of action alleged in the complaint from arbitration.  Appellants argued that because "[t]his dispute is subject to a binding and enforceable agreement to arbitrate

---

[6]     Undesignated statutory references are to the Code of Civil Procedure.

governed by the Federal Arbitration Act …[,] federal law governs the dispute and is determinative of the forum in which that dispute must be decided, even if state law governs the subject matter of the claims." Appellants reasoned that since the dispute was governed by federal law, not California law, as stated in the "Governing Law" and arbitration clause, the catch-all provision in paragraph F did not apply and JHBE must be compelled to submit to binding arbitration. Appellants alternatively argued that even if California, not federal, law governed the dispute, JHBE must submit the dispute to judicial reference in accordance with section 638 et seq.

JHBE opposed the motion on the ground it was not required to arbitrate the parties' dispute under paragraph F. JHBE argued paragraph F applied because (1) California, not federal, law applied to the state law claims asserted in the complaint, and (2) the parties' dispute involved a note secured by real property. Therefore, arbitration was required only if JHBE elected to arbitrate the dispute. Since JHBE elected to forgo arbitration, the trial court should deny the motion to compel arbitration.

JHBE also argued the motion should be denied to the extent it sought to send the dispute to judicial reference as the same issue, namely, whether appellants made a valid tender to pay the balance due on the note, was being litigated in the following probate matters pending in the probate division of Fresno County Superior Court: (1) In re The J.H. Boyd Irrevocable Trust, dated July 20, 2012, Fresno County Superior Court case No. 18CEPR00919; and (2) In re The Joseph Haig Boyd Living Trust, dated May 30, 1991, as later amended, Fresno County Superior Court case No. 18CEPR00920. JHBE argued there was a risk of inconsistent legal and factual rulings regarding the validity of appellants' alleged tenders to JHBE, and judicial economy would be served by hearing all three related cases together. JHBE asked the trial court to take judicial notice of the petitions filed in the two probate cases.

In reply, appellants asserted the motion "boils down to one key issue: what does the phrase 'if California law governs the Dispute' found in Paragraph F of the Note mean

6.

in relationship to the contract as a whole?" Appellants argued that under basic principles of contract interpretation, that phrase refers only to the process by which the dispute is litigated, not the outcome of any substantive state claims. Appellants reiterated that paragraph F was not triggered because the condition precedent contained therein remained unfulfilled, as California law did not govern the dispute, but rather only determined the outcome of the substantive claims.

With respect to JHBE's claim judicial reference should be denied due to the danger of inconsistent rulings, appellants argued that danger was of JHBE's "own making through its alter ego and princip[al], Martha Marsh," who filed the two petitions in the probate division after JHBE filed its complaint in this action. Appellants argued that if the court denied judicial reference, it would be rewarding JHBE's bad acts, through Martha, not to accept a valid tender. Finally, appellants argued the petitions were likely to be dismissed on a proper motion, as the probate court lacked jurisdiction over them because the petitions only sought an unlawful advisory opinion regarding a dispute already being litigated.

### The Trial Court's Ruling

The trial court denied the motion to compel arbitration and stay proceedings, as well as the alternative motion to send the matter to a judicial referee. The trial court noted there was "no dispute that the parties entered into a contract to arbitrate certain disputes." The trial court explained the note's terms indicate "the parties generally agreed to submit all 'disputes' regarding the note to binding arbitration" and the "term 'dispute' is broadly defined to include disputes, claims or controversies of any kind regarding the note agreement," but paragraph F declares, " 'Notwithstanding anything herein to the contrary,' if the dispute is governed by California law and the dispute concerns a loan secured by real property, then the dispute shall not be sent to arbitration unless the lender expressly agrees to go to arbitration in writing."

7.

The trial court stated there was no question the loan was secured by real property and a dispute had arisen between the parties over whether appellants made a valid tender of payment before the May 15 deadline or breached the terms of the note by failing to pay the loan by the deadline. Consequently, if the dispute was governed by California law, the court could not compel arbitration unless the lender agreed. The trial court found that California law governed the parties' dispute, as it did not appear any of the substantive issues of the case involved federal law, and since JHBE refused to consent to arbitration, it could not compel arbitration.

The trial court declined to find the language in the arbitration clause that the Federal Arbitration Act (FAA) was applicable to the arbitration proceedings established federal law governed the parties' underlying dispute, as (1) the reference to the FAA appeared to apply only to the FAA's procedural rules regarding the conduct of an arbitration, (2) there is no indication the FAA would apply to the substantive merits of the parties' underlying dispute for purposes of determining the "governing law" under paragraph F, and (3) it would not make sense to find the FAA applied to the underlying dispute, since the FAA does not contain any law regarding the breach of commercial loans or appellants' defense that they made a valid tender.

The trial court rejected appellants' argument that the term "dispute" referred to the arbitration proceedings themselves, since the term, as defined in the arbitration clause, "means the actual underlying claims of plaintiff regarding the alleged breach of the note and [appellants]' defense that it made a valid tender offer, not the procedure relating to the arbitration proceedings themselves." The trial court recognized that appellants argued at length that federal law applied because JHBE engaged in interstate commerce when it made the commercial loan, but noted the underlying claims JHBE asserted were state law claims and appellants failed to cite any applicable federal law that would govern them. The trial court determined that since there did not appear to be any federal law that applied to the parties' dispute, and there was no question of federal preemption of

8.

JHBE's claims, California law governed the dispute and, since JHBE declined to arbitrate the matter, it could not compel arbitration.

The trial court denied appellants' motion to send the matter to a judicial referee, as that would lead to a risk of inconsistent rulings because the same issues were pending in the two related probate actions, of which the trial court took judicial notice. The trial court explained that while appellants contended JHBE filed the probate actions to create a situation where judicial reference would raise the risk of inconsistent rulings, the fact remained three cases involving the same key issue were pending, and while it was possible one or more of the probate actions may be dismissed, it was also possible the cases would be consolidated so they could be heard together. In any event, the trial court declined to send the present case to a judicial referee when there was a real possibility the referee might reach a different result than a superior court judge hearing the probate matters.

Notice of entry of the trial court's order was given to appellants on October 2. On October 17, appellants filed their notice of appeal, which stated they were appealing the following judgment or order entered on October 2: "Order Denying Defendants' Motion to Compel Arbitration in Lie[u] of Answer and Motion to Stay Proceedings[.] Pursuant to California Code of Civil Procedure section 1294(a), 'after an order dismissing or denying a petition to compel arbitration.' "

## DISCUSSION

### I. The Motion to Compel Arbitration

#### A. Pertinent Legal Principles

Both the California Arbitration Act (CAA) (§ 1280 et seq.) and the FAA (9 U.S.C. § 1 et seq.) recognize " ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' " (*St. Agnes Medical Center v.*

9.

*PacifiCare of California* (2003) 31 Cal.4th 1187, 1204; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) The fundamental policy underlying both acts "is to ensure that arbitration agreements will be enforced *in accordance with their terms*." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10; see *AT&T Mobility*, at p. 344.) Thus, parties may " 'structure their arbitration agreements as they see fit. They may limit the issues to be arbitrated, specify the rules and procedures under which they will arbitrate, designate who will serve as their arbitrator(s), and limit with whom they will arbitrate.' " (*Bunker Hill Park Ltd. v. U.S. Bank National Assn.* (2014) 231 Cal.App.4th 1315, 1326; *AT&T Mobility,* at p. 344.)

"A motion to compel arbitration is essentially a request for specific performance of a contractual agreement." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239.) The party seeking to compel arbitration has the burden of proving by a preponderance of the evidence that an agreement to arbitrate the controversy exists. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Larian v. Larian* (2004) 123 Cal.App.4th 751, 759-760.) An agreement to arbitrate the controversy exists if the language of the arbitration clause shows the dispute in question, as reflected in the relevant pleading, is encompassed within the scope of the clause. (*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 229; *Larian,* at pp. 759-760.)[7]

An arbitration clause should be interpreted to require arbitration if there are doubts about whether the dispute is within its scope (for instance, because the clause is ambiguous). Put another way, arbitration should be compelled unless it can be said with

---

[7] The same burden applies to a party seeking to compel arbitration under the FAA— the party is required "to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." (*Ashbey v. Archstone Property Management, Inc.* (9th Cir. 2015) 785 F.3d 1320, 1323; *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125, 1130.)

assurance that the arbitration clause is not susceptible of a reasonable interpretation under which it encompasses the dispute in question. (*Hayes Children Leasing Co. v. NCR Corp.* (1995) 37 Cal.App.4th 775, 788; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.) We resolve any ambiguities as to the scope of the arbitration clause against the party who drafted the agreement. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 247-248.) But in the end, a party can be compelled to arbitrate only those issues it has agreed to arbitrate. (*Hayes Children,* at p. 787.)

If the moving party makes the above showing, the burden shifts to the party resisting arbitration to prove facts that would constitute a defense. (*Engalla v. Permanente Medical Group, Inc., supra*, 15 Cal.4th at p. 972.)

In deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), we apply state law principles of contract interpretation to evaluate whether they objectively intended to submit the issue to arbitration. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944; *Sandquist v. Lebo Automotive, Inc., supra,* 1 Cal.5th at p. 244.) "Thus, an arbitration agreement is governed by contract law and is construed like other contracts to give effect to the intention of the parties. [Citations.] 'If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)' " (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.) Where, as here, "conflicting extrinsic evidence was not offered below, we apply a de novo, or independent, standard of review on appeal from a trial court's determination of whether an arbitration agreement applies to a particular controversy." (*Id.* at p. 890.)

### B.     Analysis

Here, there is no question the parties entered into a valid and enforceable arbitration agreement, which requires all "disputes" to be submitted to arbitration. The term "disputes" is broadly defined, in pertinent part, as: (1) "any dispute, claim or controversy of any kind, whether in contract or in tort, Legal or equitable"; (2) "now

11.

existing or hereafter arising"; (3) "relating in any way to this Agreement or any related agreement incorporating this Arbitration Program…."  Paragraph F provides, however, that "[i]f California law governs the Dispute, the following provision is included.  Real Property Collateral; Judicial Reference: Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration…."  Thus, if California law governs the dispute and the dispute concerns a loan secured by real property, arbitration cannot be compelled unless the lender expressly agrees.

The issue here is whether the arbitration agreement requires arbitration of the parties' dispute.  This first requires identification of the dispute, followed by a determination of whether that dispute is within the scope of the arbitration agreement. (*In re Tobacco Cases I* (2004) 124 Cal.App.4th 1095, 1106.)

We identify the dispute by looking to the factual allegations of JHBE's complaint. (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185 [" 'In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint by the party refusing arbitration.' "]; *Medtronic AVE v. Advanced Cardiovascular Systems* (3d Cir. 2001) 247 F.3d 44, 55 ["To determine whether a claim falls within the scope of an arbitration agreement, the 'focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.' "]; *Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 721 [court "must examine the factual allegations raised [in the complaint] to determine" which, if any, causes of action are arbitrable].)

JHBE alleged in its complaint that the Boyd Trust defaulted on the note, which entitles it to judicially foreclose on the deed of trust.  JHBE further alleged attorneys for the parties exchanged a series of letters in which the Boyd Trust tendered payment of the

12.

note with JHBE stock and later cash, and JHBE rejected the tenders as being invalid. When JHBE finally agreed to accept the cash payment and open an escrow account to facilitate the transaction, the Boyd Trust told JHBE it was too late and stated JHBE was in breach of the note. JHBE asks for a declaration that the Boyd Trust's tenders are not valid or legally enforceable, it is not in breach of the note, and the Boyd Trust defaulted on the note.

The question then is whether this dispute is within the scope of the note's arbitration agreement. Clearly, it is a "dispute" within the meaning of the arbitration agreement, as it is an existing "dispute, claim or controversy" that relates to the note; therefore, arbitration is required unless paragraph F applies. There is no question the loan was secured by real property and the parties' dispute concerns that loan. Accordingly, if "California law governs the dispute," the court cannot be compelled to submit the dispute to arbitration, since JHBE has not agreed to arbitration.

Appellants concede the "content and outcome of any currently pled cause of action is controlled by state law." Thus, to the extent those claims constitute the parties' "dispute," paragraph F applies and arbitration cannot be compelled. In an attempt to avoid the application of paragraph F, appellants raise a host of related arguments that boil down to this—because the note affects interstate commerce, the question of arbitrability of the "Dispute" is governed by federal, not state, law (i.e. the FAA), and since California law does not govern the dispute, paragraph F does not apply.

In making this argument, appellants conflate two things—the dispute itself and whether the dispute is subject to arbitration. As we have explained, the parties' disagreement, i.e., which party is in breach of the note, clearly falls within the definition of dispute and is governed by California law. If, as appellants suggest, the arbitrability of the parties' disagreement also constitutes a "Dispute" as defined in the arbitration agreement, then the question of arbitrability must be submitted to the arbitrator and we have no power to decide whether a court may compel arbitration. (See, e.g., *Aanderud v.*

13.

*Superior Court, supra,* 13 Cal.App.5th at p. 891 [parties may agree to arbitrate " 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy' "].)

Although JHBE asserted in its brief that it appeared appellants were arguing the arbitration agreement delegated the issue of arbitrability to the arbitrator and argued the arbitration agreement does not contain a delegation clause, appellants responded that the question of delegation is not at issue in this case and they have not raised it. Instead, appellants assert this issue "seeks to distract the Court from the actual issue raised, which is whether the trial court erred when it construed the term 'Dispute' in favor of JHBE's preferred position, instead of against it."

Since appellants do not contend the term "Dispute" includes the question of arbitrability, only the parties' disagreement, as outlined in the complaint, can be the "Dispute" at issue here. Appellants nevertheless contend paragraph F does not apply if the question of arbitrability of the "Dispute" is governed by the FAA. But even if the FAA governs that question, paragraph F does not state: "If California law governs the arbitrability of the Dispute." Instead, paragraph F states: "If California law governs the Dispute." Thus, even if appellants are correct that the arbitration agreement is subject to the FAA and arbitrability is determined under it, it is California law, not the FAA, that governs the parties' dispute over who is in breach of the note.

Therefore, it does not matter for our analysis whether the arbitration agreement is subject to the FAA. Appellants rely on *Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52 (*Citizens Bank*) to argue the note affects interstate commerce; therefore, "any dispute that arose between the parties was governed by the federal law contained in the FAA, not state law." But the holding in *Citizens Bank* is not that broad. There, the court held an arbitration provision in a debt-restructuring agreement was enforceable pursuant to the FAA because there was a sufficient nexus with interstate commerce. (*Citizens Bank,* at

14.

p. 53.)[8]  There was no issue in that case regarding whether the parties' dispute came within the arbitration provision.[9]  Thus, it does not follow that merely because the FAA applies to an arbitration provision, the parties' dispute also is governed by the FAA.

In fact, federal cases are to the contrary.  Even if the FAA applies to an arbitration provision, the court still must determine whether the parties agreed to arbitrate a certain matter by applying ordinary state law principles that govern the formation of contracts.

---

[8]  The court held that while debt-restructuring agreements between the borrower, an Alabama fabrication and construction company, and an Alabama bank were executed in Alabama by Alabama residents, they nevertheless satisfied the FAA's " 'involving commerce' " test because (1) the borrower "engaged in business throughout the southeastern United States using substantial loans from the bank that were renegotiated and redocumented in the debt-restructuring agreements"; (2) the restructured debt was secured by all of the borrower's "business assets, including its inventory of goods assembled from out-of-state parts and raw materials"; and (3) the " 'general practice' " represented by the parties' economic transactions, namely, commercial lending, had a "broad impact" on the national economy and Congress' power to regulate it.  (*Citizens Bank, supra,* 539 U.S. at p. 57.)

Relying on *Citizens Bank*, appellants argue the note affects interstate commerce because (1) JHBE borrowed $2 million from Wells Fargo Bank to fund the loan to the Boyd Trust; (2) Martha conducts JHBE's business primarily from her home in Maryland; and (3) both JHBE and the Boyd Trust regularly loan money as part of their commercial operations requiring security.  In our view, this evidence does not establish a sufficient nexus with interstate commerce within the meaning of *Citizens Bank*.  There is no evidence the Boyd Trust used the loan to engage in business in other states or secured the loan using out-of-state assets, and no evidence the loan transaction was part of the parties' commercial lending activities.  Instead, the loan was between father and son (through their respective trusts), secured by real property located in Kerman.  While JHBE may have procured the funds from Wells Fargo Bank, the bank was not involved in the loan to the Boyd Trust.

[9]  Alabama law prohibits the specific enforcement of predispute arbitration agreements; such an agreement is enforceable only if the FAA applies, thereby preempting Alabama law, which occurs when the transaction substantially affects interstate commerce.  (*Cent. Reserve Life Ins. Co. v. Fox* (2003) 869 So.2d 1124, 1127.)  The only issue in *Citizens Bank* was whether the parties' predispute arbitration agreement was enforceable because the debt-restructuring agreement was " 'a contract evidencing a transaction involving commerce' " within the meaning of the FAA.  (*Citizens Bank, supra,* 539 U.S. at p. 53.)

(*First Options of Chicago, Inc. v. Kaplan, supra,* 514 U.S. at p. 944; see *Cox v. Ocean View Hotel Corp.* (9th Cir. 2008) 533 F.3d 1114, 1119; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.* (9th Cir. 2000) 207 F.3d 1126, 1130.) We have performed this function when we determined above that the parties' dispute in this case, as set forth in the complaint, is governed by California law, and therefore, under paragraph F, arbitration cannot be compelled.

Appellants contend the broad definition of the term "Dispute" in the arbitration agreement covers not only the causes of action alleged in the complaint, but also "any potential claims and cross-claims the parties may have against one another that in any way relate to the agreement." In a related argument, they contend the term "Dispute" is ambiguous because it could "mean one of two options: (1) it may refer to the entire controversy between the parties; or (2) it may mean the claims at issue." They assert it is irrational to limit the term "Dispute" to the claims currently pled as that interpretation "fails to take into account possible defenses and cross-claims" that appellants may still plead. They also claim that interpretation is unreasonable considering they have not had the opportunity to file a cross-complaint before filing the motion to compel arbitration. Appellants appear to claim they can assert violations of federal law in a cross-complaint such that the parties dispute would be governed by federal law.[10]

This argument fails because, as we have explained, under both the CAA and FAA, the court examines the allegations in the complaint to determine whether an arbitration agreement applies to the parties' dispute. (*Rice v. Downs, supra,* 248 Cal.App.4th at p. 185; *Medtronic AVE v. Advanced Cardiovascular Systems, supra,* 247 F.3d at p. 55;

---

[10]     For the first time in their reply brief, appellants assert JHBE, as a secured lender, "potentially violated" federal laws such as the Fair Debt Collections Practice Act, 15 United States Code § 1692 et seq., the Truth in Lending Act, 15 United States Code § 1601 et seq, and other unfair methods of competition made unlawful pursuant to 15 United States Code section 45, but it is "premature to test these claims because they have not been pled yet."

16.

*Simula, Inc. v. Autoliv, Inc., supra,* 175 F.3d at p. 721.) Thus, claims and causes of action not pled do not factor into the analysis. This does not involve an interpretation of the term "Dispute," as appellants claim, but rather the method used to determine whether a particular claim asserted in a complaint is covered by the arbitration agreement. While appellants point out they have not had the opportunity to assert claims that could lead to a determination paragraph F does not apply, they opted to file the motion to compel before filing an answer or cross-complaint. At this juncture, we can look only to the complaint's allegations to determine whether the parties' dispute is arbitrable.

Appellants also point to the "Governing Law" provision in the note, which states the note "will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions," to argue California law "does not govern the dispute— meaning the forum in which the matter, controversy, claim, etc. must be heard." Rather, they argue, California law "simply governs the outcome of the individual causes of action as would be the case if the action was to be determined under the FAA deciding matters of state law or a diversity case in federal court."

To the extent appellants are claiming the term "Dispute" means the forum in which the case must be heard, forum is not included in the definition of dispute, which encompasses "any dispute, claim or controversy." Moreover, even if the "federal law applicable to Lender" is the FAA, as appellants claim, California law also applies "to the extent not preempted by federal law." While the FAA preempts state law, it only preempts *conflicting* state law. (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [although the FAA does not contain an express preemptive provision, state law nevertheless is preempted to the extent it actually conflicts with federal law].) Appellants do not point to any relevant state law that conflicts with the FAA, such that the FAA would take precedence. Finally, the complaint alleges only state claims for

judicial foreclosure and declaratory relief. The reference to federal law as the governing law does not transform JHBE's claims against appellants into federal claims.[11]

Appellants contend the trial court's interpretation of the note renders the arbitration agreement "superfluous, void, and inexplicable" because, under the trial court's "rubric where 'Dispute' is rendered to mean only current causes of action properly pled, Part F would always apply and Arbitration would never be available unless JHBE agreed." Appellants add that because the loan is secured, JHBE would always be able to avoid arbitration as the dispute would always be governed by state law. Appellants assert the trial court should have interpreted paragraph F in a manner that would not render the arbitration agreement superfluous by recognizing the term "Dispute" involved matters other than the causes of action alleged in the complaint and was governed by the FAA.

Although it is true that we attempt to interpret a contract "so as to give effect to every part" (Civ. Code, § 1641), we must do so only "if reasonably practicable." (*Ibid.*) When "the only reasonable construction of the contract" requires us to interpret a portion of the contract as redundant, we may do so. (*Flintkote Co. v. General Acc. Assur. Co.* (N.D. Cal. 2006) 410 F.Supp.2d 875, 890.) Moreover, "[i]f a general and a specific provision are inconsistent, the specific provision controls." (*Ticor Title Ins. Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730, citing *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 384.)

---

**11** Appellants' reliance on *Regions Bank v. Weber* (La. 2010) 53 So.3d 1284 is misplaced. There the Louisiana appellate court held a guarantor sued by a bank under a guaranty agreement to collect on a debt evidenced by a promissory note containing an arbitration provision could avail himself of that provision. (*Id.* at p. 1286.) In so holding, the court found the bank was equitably estopped from objecting to the guarantor's demand for arbitration. (*Id.* at p. 1291.) While the promissory note in *Regions Bank* contained the same governing law provision as in this case, the note did not contain the same language as paragraph F that exempted certain state law claims from arbitration.

18.

Here, paragraph F is the specific provision that controls the interpretation of the arbitration agreement. As long as the parties' dispute is governed by California law, arbitration will not be available to the Boyd Trust unless JHBE agrees to it. In that situation, the Boyd Trust may elect to have the dispute resolved by judicial reference. As we have explained, paragraph F and the meaning of the term "Dispute" simply cannot be interpreted as appellants suggest, and appellants' complaint in reality is not with the interpretation of the arbitration agreement, but rather with the method by which a court determines the parameters of the parties' dispute and whether that dispute is covered by the arbitration agreement. Finally, appellants contend the trial court erred when it resolved the ambiguities regarding the meaning of the term "Dispute" in favor of JHBE and against arbitrability because "ambiguities in a written contract are to be construed against the party who drafted it." (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 745; accord Civ. Code, § 1654.) But we do not perceive an ambiguity in the arbitration agreement on this point, as an ambiguity only exists if the contract is capable of two or more reasonable constructions. (*Tustin Field Gas & Food, Inc. v. Mid-Century Ins. Co.* (2017) 13 Cal.App.5th 220, 229-230.)

In sum, the parties' dispute, as framed by the complaint, is governed by California law. Since the dispute concerns a secured loan and JHBE has not elected to proceed with the arbitration, under paragraph F, the dispute cannot be submitted to arbitration. Accordingly, the trial court did not err when it denied appellants' motion to compel arbitration.

## II. The Motion for Judicial Reference

Appellants also contend the trial court abused its discretion when it denied their alternative request for judicial reference on the ground there was a risk of inconsistent rulings. Appellants claim the risk was not legitimate, as the probate court lacked jurisdiction over the issue concerning tender of payment, and in ruling in JHBE's favor, the court allowed Martha to benefit from her own inequitable conduct and unclean hands.

19.

We agree with JHBE that the trial court's order is nonappealable and grant its motion to dismiss this portion of the appeal.

Under California law, the right of appeal is statutory. (*Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1021 (*Gastelum*).) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) "The appealability of the judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed." (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297.)

Here, we are presented with the issue of the appealability of a trial court's order, which "is appealable when it is made so by statute." (*Griset v. Fair Political Practices Com., supra,* 25 Cal.4th at p. 696.) Appellants' purported appeal does not fall squarely within any statutorily authorized category in section 904.1, which contains the general list of appealable civil judgments and orders. (See *Gastelum, supra,* 244 Cal.App.4th at pp. 1021-1022.) While the denial of a motion to compel arbitration is appealable under section 1294, subdivision (a),[12] that statute does not mention judicial reference, and therefore does not provide direct statutory authority for review of an order denying judicial reference.

Though there does not appear to be any published case directly addressing the appealability of orders denying judicial reference, uniformly the grant or denial of a request to enforce a judicial reference provision is reviewed by writ. (See *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 541; *Treo @ Kettner Homeowners Assn. v. Superior Court* (2008) 166 Cal.App.4th 1055, 1060; *Woodside*

---

[12] Section 1294, subdivision (a) provides: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration." (See *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349 [order denying motion or petition to compel arbitration is appealable].)

20.

*Homes of California, Inc. v. Superior Court* (2006) 142 Cal.App.4th 99, 101; *Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 955, disapproved on another point by *Tarrant Bell*, at p. 545, fn. 5; *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 726; *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1085.)  For example, in *Tarrant Bell*, the parties' agreement provided for arbitration of certain disputes or judicial reference if the arbitration provision was unenforceable.  The defendants petitioned for a writ of mandate seeking to vacate the denial of their motion to appoint a referee and separately appealed from the denial of their motion to compel arbitration.  (*Tarrant Bell*, at pp. 540, 541 & fn. 3.)

Notwithstanding those authorities, appellants assert the order denying judicial reference is appealable under section 1294.2, which provides ancillary appellate jurisdiction over orders affecting appealable arbitration orders.  As stated in the relevant portion of section 1294.2:  "Upon an appeal from any order or judgment under this title [governing arbitration], the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party."

Although an order denying a stay of trial court proceedings is not appealable, courts, in applying section 1294.2, have held that the order may be reviewed on appeal from an order refusing to compel arbitration.  (*Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 612, fn. 5; *Pacific Inv. Co. v. Townsend* (1976) 58 Cal.App.3d 1, 6, fn. 1; *Berman v. Renart Sportswear Corp.*(1963) 222 Cal.App.2d 385, 388 (*Berman*).)  The court in *Berman*, noting that sections 1281.4 and 1292.8 of the CAA provide for the granting of a stay of proceedings as an incident to an arbitration, explained that an order denying a stay is reviewable on appeal from the order denying arbitration as provided in section 1294.2, as it " 'affects the order … appealed from' " and " 'substantially affects the rights' " of a party.  (*Berman*, at p. 388.)

21.

"But the ancillary jurisdiction conferred by section 1294.2 simply ensures that the appellate court can effectuate its ruling on an arbitration order, by permitting review of any other trial court decision affecting that specific order." (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 769 (*Westra*).) That limitation on the appellate court's ancillary jurisdiction is reflected in the cases. In *Westra*, buyers of a gas station brought an action for fraud against the seller and realtor; the trial court denied arbitration as to the nonsignatory realtor while compelling the buyers and seller to arbitrate. (*Id.* at pp. 761-762.) The appellate court reviewed the order *denying* arbitration, as statutorily authorized, but refused to consider the order *compelling* arbitration. (*Id.* at p. 769.) Rejecting the argument that the nonappealable order compelling arbitration was an "intermediate" order under section 1294.2 because it "was 'intertwined' with" the appealable order denying arbitration, the court found the two orders "logically separate and not intermediate to each other." (*Id.* at pp. 768-769; see *Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 825 [order granting arbitration is not appealable under section 1294.2 merely because it was rendered at the same time as an order denying arbitration].)

The appellate court in *Westra* found the published cases interpreting section 1294.2 to be consistent with its conclusion. (*Westra, supra,* 129 Cal.App.4th at p. 769.) Citing *Berman*, the *Westra* court explained it was obvious in *Berman* that "the denial of the stay had to be reviewed if the appellate court decided to order arbitration; otherwise, the appellate court's determination on the motion to compel arbitration would have been ineffectual. In the present case by contrast, no order we render on the legality of arbitration as to [seller] is directly affected by the legality of arbitration as to [realtor], and vice versa." (*Westra*, at p. 769.)

The *Westra* court also cited *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 220, explaining there "the appellate court held it had no jurisdiction to review a ruling sustaining a demurrer in connection with an appeal from an

22.

order denying a petition to compel arbitration. The court found that the demurrer only concerned the merits of the underlying action and, as in the present case, did not affect the order denying the petition to compel arbitration which has been appealed from." (*Westra, supra,* 129 Cal.App.4th at p. 769.)

Here, the order denying the motion for judicial reference does not fall within the ancillary appellate jurisdiction provided by section 1294.2. While the denial of judicial reference arguably substantially affects the rights of a party, it is not intermediate to the order denying arbitration. Review of the judicial reference order is not necessary to "effectuate" our ruling on the arbitration order—it neither affects the denial of the motion to compel arbitration, nor involves any party's right to arbitration. (*Westra, supra,* 129 Cal.App.4th at p. 769.) Rather, the order denying judicial reference was "logically separate and not intermediate to" the order denying the motion to compel arbitration. (*Ibid.*)

Appellants argue that because judicial reference is an alternative form of relief under the arbitration agreement, it is "the functional equivalent of the denial of arbitration and are therefore properly before this Court." Appellants take the "functional equivalent" language from *Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94 (*Henry*), which they say stands for the proposition that "courts routinely treat an order denying an accompanying request for a stay[] as the 'functional equivalent' of an order denying a petition to compel arbitration."

Appellants' reliance on *Henry*, however, is misplaced. There, the trial court granted the plaintiff's motion to stay an arbitration the defendant initiated with the American Arbitration Association while the lawsuit was pending pursuant to an arbitration clause in the plaintiff's loan request. (*Henry, supra,* 233 Cal.App.3d at pp. 97-98.) The appellate court held the order staying the arbitration was appealable because it was "the functional equivalent of an order refusing to compel arbitration," as it was "merely the flip side" of that order and "should be treated the same for purposes of

23.

appellate review." (*Id.* at pp. 99-100.) *Henry* did not involve a motion to stay the judicial proceedings brought in conjunction with a motion to compel arbitration, as appellants suggest, or address the applicability of section 1294.2 to such a motion, and therefore it has no bearing here. Moreover, the denial of the motion to compel judicial reference is not the "flip side" of the denial of the motion to compel arbitration—the two are completely separate and significantly different. (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341-1342 [explaining the differences between judicial reference and contractual arbitration].)[13]

Because the order denying the motion for judicial reference is not appealable, we are required to dismiss the portion of the appeal purporting to be from that order. (*Gastelum, supra,* 244 Cal.App.4th at p. 1023.) Accordingly, we grant JHBE's motion to partially dismiss the appeal. Appellants have asked us to either augment the record with, or take judicial notice of, pleadings filed in the probate cases, which they argue are relevant to the issue of whether the trial court erred in denying judicial reference and their related request that we issue a writ of *coram vobis* commanding the trial court to reconsider the denial in light of these pleadings. Since we have dismissed the appeal from the order denying judicial reference, we deny the motion to augment the record.

---

[13] Appellants also cite California Rules of Court, rule 8.100(a)(2), which provides a "notice of appeal must be liberally construed," and "is sufficient if it identifies the particular judgment or order being appealed." This rule, however, has nothing to do with whether a particular order is appealable.

24.

## DISPOSITION

The order denying appellants' motion to compel arbitration is affirmed. JHBE's motion to dismiss the appeal from the order denying the motion for judicial reference is granted and the appeal from that portion of the order is dismissed. Appellants' motion to augment the record, and their alternative request for judicial notice, is denied. JHBE is entitled to its costs on appeal.

_____
DE SANTOS, J.

WE CONCUR:


_____
SMITH, Acting P. J.


_____
MEEHAN, J.

Filed 9/10/19

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| J.H. BOYD ENTERPRISES, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KENNETH ROBERT BOYD, Individually and as Trustee, etc., et al., <br><br> Defendants and Appellants. | F078292 <br><br> (Super. Ct. No. 18CECG02227) <br><br> **ORDER GRANTING REQUEST FOR PUBLICATION** |

On September 5, 2019, the court received and filed a request for publication of the nonpublished opinion filed on August 23, 2019, in the above entitled matter. It appearing that part of the nonpublished opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of part I. of the Discussion.

DE SANTOS, J.

WE CONCUR:

SMITH, Acting P.J.

MEEHAN, J.